THOMAS C. McDOWELL, Plaintiff in Error, *v.* RICHARD P. MORGAN, Jr., *et al.*, Defendants in Error.

ERROR TO LIVINGSTON.

A valid entry of land gives an equitable title to it which cannot be divested.

Land officers cannot, without authority, adopt a rule by which entries of land can be made by one citizen to the exclusion of another, as a matter of favoritism.

A practice of the land officers by which written applications could be made for land at times when those offices were closed to private entry, to give the applicant a preference or pre-emption, is unauthorized.

All rules of the land office should allow applications to enter land to be made openly and publicly, without advantage to one person over another.

Rules for the regulation of the business of land offices which are not illegal, and do not authorize advantage to one person over another, may be adopted.

A party who claims title to land by right of entry under the Government, need not show fraud by his bill, if he has an equitable title, and can show that he has been deprived of the legal title, which by some means has been vested in his contestant.

THIS was a bill in chancery to enjoin ejectment suits, and set aside patents to certain lands, in Livingston county.

The bill sets forth that on the 4th day of January, 1853, McDowell, by his agent, Campbell, applied to the register and receiver of the United States Land Office, at Danville, to enter certain tracts of land then being subject to private entry with land warrants. The application was in writing, and pursuant to the rules of the government, that when he so applied, the register or receiver stated to Campbell that Kersey H. Fell had applied to enter these lands with a large amount of other lands, but was not then present, and had not deposited for them any money or warrants, but they had given him thirty days to furnish money or land warrants; that

Campbell insisted upon his right to enter the land with money and warrants, and was permitted to do so, and D. Clapp, the register, gave certificates of entry in the usual form, dated January 4th, 1853, covering said lands; that the lands were then all vacant and unoccupied, and continued to be forty days afterwards.

No pre-emption was ever filed; that on the 14th of February, 1853, McDowell sent the certificates to the commissioner of the land office at Washington, for patents, and on the 20th September, 1853, the commissioner sent a letter acknowledging the receipt of the certificates, and promising patents in due time.

That in December, 1853, McDowell took possession, and made valuable improvements, and afterwards made several conveyances of portions of the property to the several persons mentioned in the bill. Alleges possession and improvements by them; that some time in the month of February, 1856, McDowell was notified for the first time, that Fell had been permitted by the land officers at Danville to enter said lands on the 25th of January, 1853, and that, without giving notice to McDowell, they canceled the entries made by him on the 4th, and issued certificates to Fell for all said lands, except west half north-east quarter of section thirteen; and on the 22nd November, 1856, patents were issued to him without notice to McDowell, or any opportunity to adduce proofs, and upon *ex parte* proofs by Fell, and ordered the certificates to McDowell canceled, and wrote canceled across them. That he never submitted his certificates to the commissioner for adjudication; charges, that Fell either assigned his certificates or immediately deeded to Morgan; that Morgan had full knowledge of McDowell's rights; that the land in section thirteen constitutes part of McDowell's farm, now and for a long time occupied by him; that Morgan, on the 21st of September, 1857, commenced ejectment suits in Livingston Circuit Court for the lands.

Prays injunction against Morgan and others, and for general relief. Oath waived.

Morgan answers, and admits that Campbell applied to enter

lands, 4th January, 1853, and entered said lands; says he obtained certificates by falsely representing that Fell had relinquished his right to enter the lands to him. Says Campbell was there on the 25th of January; also, that Campbell entered on condition that if Fell should claim his right to enter the lands, the receiver should not be compromised, and if Fell claimed his right to enter them when the office should be opened, Campbell would return the certificates and take back his warrants. Says that Fell had deposited with Clapp, money and warrants to enter the lands; that an actual survey of the lands was made by Fell, with a view to entering the same. Admits they were unoccupied. Says Fell entered lands, 25th January, 1853; says that McDowell's agent had notice of entry by Fell, on 25th January, 1853. Admits that Fell sent certificates to Washington, as stated. Denies that Fell assigned certificates to Morgan; says he deeded to Morgan, 1st of March, 1853. Admits that when he received deeds from Fell, he was aware of the certificates to McDowell. Insists that the bill is without equity.

Fell's answer, says that on the 20th of October, 1852, he made a written application to the register to be permitted to enter said lands with others; that he was informed by the register that no entries could be made before about the 1st of February, 1853, in consequence of business being behind. Register said, by a rule he had adopted, he would receive written applications, and on re-opening of the office, would allow applicants to make entries according to dates of application. The first applicant being present at the opening of the office was allowed a reasonable time to make his application good by entries; was then prepared to make entries; was told by the register they had dispensed with the necessity of depositing the same on applications made by responsible parties. Says he had a considerable amount of money and warrants in the hands of Clapp, to make good his application. That he received notice on the 20th of January, 1853, that the office would open on the 25th. Then went, and was ready with money and warrants to make good his application; was informed that Campbell had entered said lands. The rest of the answer substantially like Morgan's.

There was a general replication filed.

The testimony sustained the allegations of the bill.

In April, 1861, the case was tried, and bill dismissed for want of equity.

The errors assigned, are, That the court erred in dismissing the bill for want of equity.

That the decree should have been for the complainant, according to the prayer of this bill.

HURD, BOOTH & POTTER, for Plaintiff in Error.

The register and receiver had no right to make a rule of their office, that persons could make written applications for lands in October, 1852, (before the land office was open for private entry), and give such persons a prior right to enter such lands. Such rule was a fraud on the government and upon purchasers, and gave a monopoly to land agents, and enabled them to speculate out of *bona fide* purchasers.

Sec. 124, Acts of 1820, Brightley's Dig. U. S. Laws, p. 480, provides, that " credit shall not be allowed for the purchase-money on the sale of any lands, etc., but the purchaser at private sale shall produce, to the register of the land office, a receipt from the receiver, etc., before he shall enter the same at the land office." Section 125 provides, that lands not sold at public sale shall be subject to entry at $1.25 per acre, to be paid at the time of entry; and section 128 provides, that in every case when two or more persons shall apply for purchase at private sale of the same tract at the same time, the register shall determine the preference by forthwith offering the tract to the highest bidder. The act of Congress also prohibits the register from marking lands sold, when they are not.

The certificate of the register passed the title of the land to McDowell, and neither the receiver and register or commissioner had any right of control over the property. 2 Clark's Iowa R. p. 1.

The same principle is recognized in 1 Scam. 156, 344; 3 Scam. 97, 113, 166 ; 4 Scam. 363 ; 23 Ill. 61.

The testimony utterly fails to establish any fraud in Fell and the land officers.

A. H. WICKIZER, for Defendants in Error.

The register and receiver, who were agents to sell the lands of the United States, had the right to make such rules (not inconsistent with law), as were necessary for the convenient transaction of the business of their office.   Story on Agency, 77, 109, 142, 179, 242.

The rule, as established by the officers, was a reasonable and equitable one, and was well calculated to promote the convenience of parties desirous of entering lands in the Danville district.

CATON, C. J.   If McDowell's entry of this land by Campbell was a legal and valid entry, under the law, then he acquired an equitable title to the land, which cannot, by the act of the officers of the land office, or anybody else, without his consent, be divested.   And he has a right to pursue the legal title into the hands of any one who has acquired it, with notice. If Fell, by his previous application to enter this and other lands, thereby acquired any right to or interest in the land, which continued in him at the time of this entry, then the land was in fact withdrawn from the market, and this entry was void.   It seems that the land officers were in the habit of allowing parties to file written applications to enter land at times when the office was closed to private entry, which, according to their intention, was to give the applicant a pre-emption to the lands thus applied for, if the pre-emptor should complete his entry within one month after the office should be again opened to private entry.   They had no instructions to do this from the commissioner of the general land office, nor did they make any written rule of their office to that effect. They adopted that course in pursuance of a verbal understanding between themselves.   And the question is, could these land officers thus make a pre-emption law which could vest in the applicant a right to enter this land at any time within the month, to the exclusion of the rights of other citizens?   The proposition seems to us almost absurd.   It is in palpable violation of the laws and policy of the General Government.   If such a practice were legal, then one or a few

men could, by simply filing written applications, acquire this pre-emption to all the lands in the district, and thus exclude all other persons from the right to acquire lands in the district, except by buying of these men, and virtually close the land office till they chose to come and pay their money and take a certificate for the lands, within the month. There is no law authorizing such a course, but it is in direct violation of the law. The law requires, that applications to enter land should be made openly and publicly at the land office, and if two or more persons apply at the same time to enter the same tract, then neither is entitled to it at the minimum price, but the register is required to put it up at auction, and to sell it to the highest bidder. Now this could not be done, if Fell had acquired a pre-emption right to these lands; and yet he acquired such a right, if he acquired any right at all. We do not question the right of the land officers to adopt reasonable rules for the convenient, systematic and orderly conduct of business in their office, and to change or abrogate them, as convenience may dictate. But such rules must not be illegal. They must not contravene the essential provisions of the laws which Congress has passed for the disposal of the public lands. They could by no rule of their own vest in any one an interest in or a right to purchase the public lands in any mode other than that prescribed by the act of Congress. We have no doubt that Fell, by his application, did not acquire any vested pre-emption right to purchase this tract of land, but that it remained all the time open to private entry, and that the entry to McDowell was a legal entry.

It is not true, that the complainant must show fraud before he can obtain the relief sought by this bill. It is enough that he shows that he has the equitable title to the premises, and that he is entitled to the legal title, which, by some means, no matter what, has been vested in the defendant. This is a broad and universal principle, which we are called upon to apply and enforce almost every day. Here the defendant had notice of all the facts constituting the rights of the plaintiff, and that is sufficient to make him a trustee of the legal title for the complainant, no matter what his opinion may have been of the validity of the complainant's entry.

The decree below is reversed, and decree here that the defendant convey the legal title to the complainant.

*Decree reversed.*