# RUFUS W. ROBBINS

*v.*

# THOMAS J. BUNN *et al.*

1. PRE-EMPTION RIGHTS—*entry of government lands—who may decide as to their validity.* Under the pre-emption laws passed by congress, the land officers have, by implication, the right to decide all cases of contested pre-emption, so far as they depend upon the fact of prior settlement, and their finding in that regard, has been held conclusive by the courts, on the ground that such officers, in these proceedings, act in a *quasi* judicial capacity, and within the scope of their authority.

2. And the land officers having the power to adjudicate upon the facts which give a pre-emption right, they have the power when the right is contested by a person claiming under a private entry, as well as when both claim under pre-emptions.

3. On the other hand, when such officers have undertaken to cancel a patent or a certificate of entry, for which a purchaser has paid his money, either at their discretion, or under some pretended regulation of the department which the law did not authorize, or under some clearly erroneous construction of the laws of congress, the courts have held themselves not bound by such acts of the officers of the land department, because they were not exercising a judicial function within the limits prescribed by law.

4. So where a party purchased a tract of land at a government land sale, receiving the usual certificate of purchase, and subsequently another was allowed to enter the same land as a pre-emptor, the former contested the pre-emption claim before the register and receiver, who held the claim good, and the first purchaser appealed to the commissioner of the general land office, who ordered the entry of the pre-emptor to be canceled, and at once issued a patent to the contestant. The party claiming the pre-emption then appealed to the secretary of the interior, who reversed the decision of the commissioner, decided the pre-emption claim to be valid, and ordered the patent issued to the first purchaser to be canceled: *Held,* in a suit between those claiming under the respective parties, that the decision of the land officers was final, upon the right of pre-emption, so far as it depended upon the fact of settlement.

5. PRE-EMPTOR—*of his right to convey the land before receiving a patent.* Under that clause of the twelfth section of the pre-emption law of 1841, which declares that all assignments and transfers of the right thereby secured, prior to the issuing of the patent, shall be null and void, it is only the assignment or transfer of the right of pre-emption which was prohibited— it was not the design of the act to prohibit the sale of land entered under a pre-emption claim, after the entry was made, and before the patent was issued.

6. So a mortgage executed by a party who had entered the mortgaged premises as a pre-emptor, before he received a patent therefor, was held not to be within the prohibition, and was not void under that act.

7. MORTGAGE—*of taxes paid by an unsuccessful claimant of the mortgaged premises.* Where a party purchased land at a government sale, for which a patent was issued to him, which was afterwards canceled by the land officers, in favor of one who entered the same land as a pre-emptor, after the purchase by such patentee, the taxes paid upon the land by the latter would not become a prior lien to a mortgage executed by the pre-emptor after he made his entry.

APPEAL from the Circuit Court of DeWitt county; the Hon. JOHN M. SCOTT, Judge, presiding.

The opinion states the case.

Messrs. WILLIAMS & BURR, for the appellant.

Mr. C. H. MOORE, *pro se,* and for appellee Davis.

Mr. Justice Lawrence delivered the opinion of the Court:

On the fifteenth of November, 1855, John P. Mitchell purchased at the government land sales a part of section 27, in township 19 range 3, in the Danville land district, and received the usual certificate of purchase, and at the same time Clifton H. Moore purchased another portion of the same section, and also received his certificate of purchase. On the second of February, 1856, Thomas J. Bunn was allowed to enter the same land as a preëmptor, claiming to have commenced a settlement and improvement on said land on the eighth of November, 1855. Moore and Mitchell contested the preëmption claim of Bunn, and sought to have it set aside by the register and receiver. They, however, held it good, and Moore appealed to the commissioner of the general land office, who ordered the entry by Bunn to be canceled, and at once issued a patent to Moore. Bunn appealed to the secretary of the interior, who reversed the decision of the commissioner, decided the preëmption claim to be valid, and ordered Moore's patent, which had been delivered, to be canceled. Moore was notified of the decision and requested to return his patent, which he refused to do.

Mitchell's title under his certificate was sold on judgment and execution against him, and passed to David Davis, one of the defendants.

On the twenty-second of February, 1856, a few days after his entry, Thomas J. Bunn mortgaged the land to Louis Bunn, who subsequently assigned the note and mortgage to Robbins. Robbins has filed the present bill to foreclose, making Bunn, Moore and Davis defendants, and asking that the title of Moore and Davis should be set aside. On the hearing the court dismissed the bill as to Moore, but held the title of Davis subject to the mortgage. Both parties appealed.

Counsel for complainant, without arguing the question of Bunn's right to a preëmption, on the facts, insist that the decision of the secretary of the interior is conclusive upon that

point, and upon the rights of the parties who have submitted their claims to his determination. In support of this position they cite *McConnell* v. *Wilcox*, 1 Scam. 353; *Benner* v. *Manlove*, 3 ib. 339; *Bennett* v. *Farrar*, 2 Gilm. 598; *Gray* v. *McCance*, 14 Ill. 344, and *McGhee* v. *Wright*, 16 ib. 555.

On the other hand, counsel for defendants insist, when the government has sold a tract of land and received the money of the purchaser, he has acquired rights which the land officers can not divest, and if the government afterwards grants the legal title to another, such grantee takes it subject to the equities of the first purchaser, which it is the exclusive province of the judicial tribunals of the country to investigate and determine, without being governed by the action of the land officers. To sustain this view, defendants' counsel cite *Rogers* v. *Brent*, 5 Gilm. 578; *McDowell* v. *Morgan*, 28 Ill. 528; *Forbes* v. *Hall*, 34 ib. 167; *Brill* v. *Stiles*, 35 ib. 307, and *Aldrich* v. *Aldrich*, 37 ib. 35. To these may be added, *Baty* v. *Sale*, 43 ib. 351.

These two classes of cases may seem, at first, inconsistent with each other, and there probably are some expressions in the various opinions not strictly harmonious, but on further consideration it will be seen there is no real antagonism in the decisions. The cases of the first class relate to preëmption claims, upon which the land officers have decided. The preëmption law of 1830 required proof of the facts upon which the right of preemption depended, to be made to the satisfaction of the register and receiver, agreeably to rules to be prescribed by the commissioner of the general land office. This, by implication, gave them the right to decide all cases of contested preëmption, so far as they depended upon the fact of prior settlement, and this construction has been uniformly given to the law, as will be seen in the cases above cited, and in other authorities quoted in the opinions pronounced in those cases. The finding of the land officers upon the facts in matters of preëmption, has been held conclusive by the courts, upon the familiar ground that such officers, in these proceedings, were acting in a *quasi* judicial capacity, and within the scope of their authority.

But on the other hand, when these officers have undertaken to cancel a patent or a certificate of entry, for which a purchaser has paid his money, either at their discretion, or under some pretended regulation of the department which the law did not authorize, or under some clearly erroneous construction of the laws of congress, the courts have held themselves not bound by such acts of the officers of the land department, because they were not exercising a judicial function within the limits prescribed by law. The cases cited by counsel for defendant will be found to relate to proceedings of this character.

Between these two classes of authorities, there is a clear and sound distinction. In the one, the proceedings of the land officers are held conclusive, because judicial in their character, and within their conceded jurisdiction. In the other, such proceedings are not held conclusive, because they are either ministerial in their character, or, if judicial, beyond the authority given by the acts of congress. In the case of *Baty* v. *Sale, ubi supra,* which is, perhaps, the strongest case for the defendant upon this question, the commissioner of the general land office, after having decided that the preëmption had been properly proved, and the entry properly made, subsequently undertook to cancel the entry, on the ground that the preëmptor had forfeited his right by failing to comply with a regulation of the department, requiring a renewal of his application after the lands had been temporarily taken out of market. The court held the department had no power to make such a regulation, and that the preëmptor could not thus be arbitrarily divested of the rights given to him by law. This, it will be observed, was not a case of judicial investigation, authorized by law, of the facts upon which the right of preëmption depends, but an attempt, by force of an unauthorized rule of the department, to take away a right already established. The other cases cited by defendant, are still more distinct from the opposing class, and from the case at bar.

We find it impossible to distinguish the case at bar from several of those cited by complainant. In principle, it is

precisely like *Gray* v. *McCance* and *McGhee* v. *Wright, ubi supra.* In *Gray* v. *McCance,* it is true, both parties claimed under a preëmption, but there, as here, one party had paid his money and obtained his certificate. Besides, as the power is given to the land officers to adjudicate upon the facts which give a preemption right, they must necessarily have that power when the right is contested by a person claiming under a private entry, as well as when both claim under preëmptions. The act of 1841, in terms, gives the power in the last case, but the previous laws give it in both cases, by necessary implication. Indeed, in *McGhee* v. *Wright* the contest was, as here, between a preemption claimant, and a claimant under a private entry. There as here, the latter had received his patent, and the only respect in which that case is unlike this, is, that there the preëmption claimant had received a patent of a junior date. But that had no bearing whatever upon the question of the conclusive effect of the decision by the officers of the land department.

In the case before us, the parties have submitted their claims to a tribunal authorized to pass upon them so far as the right of preëmption depended on the fact of settlement, which is the only question raised here by defendants, it being insisted by them that Bunn was not a settler in good faith. Both parties produced their evidence before the register and receiver, and each, in turn, prosecuted an appeal to a higher tribunal. We must, under the clear current of authorities, hold the decision of that tribunal final upon the questions presented by this record.

The circuit court should have rendered a decree holding the title of all the defendants subject to complainant's mortgage. The decree must be reversed, the costs of this court to be taxed against Davis and Moore.

*Decree reversed.*

At the January term, 1871, a rehearing was granted in this case, on the petition of the appellees, and upon the second argument the following additional opinion was announced.

Mr. CHIEF JUSTICE LAWRENCE* delivered the opinion of the Court:

A rehearing having been granted in this case, we have again considered it, but see no reason to doubt the soundness of the conclusions announced in the former opinion filed herein. It is unnecessary to add anything to that opinion, in regard to the questions which it discusses. We will, however, state our conclusions upon another point not pressed in the first argument, nor considered by the court, but upon which stress is laid in the petition for rehearing, and in the second argument.

It is urged by counsel for appellee, that as the mortgage was made by the preëmptor before the patent was issued, it was void, and Robbins took nothing by the assignment. This position is founded on the twelfth section of the preëmption law of 1841, which reads as follows:

"*And be it further enacted,* That prior to any entries being made, under and by virtue of the provisions of this act, proof of the settlement and improvement thereby required, shall be made to the satisfaction of the Register and Receiver of the Land District in which such lands may lie, agreeable to such rules as shall be prescribed by the Secretary of the Treasury, who shall each be entitled to receive fifty cents from each applicant for their services to be rendered as aforesaid; and all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void."

It is insisted that under the last clause in the foregoing section, the mortgage is void.

In order to arrive at a satisfactory conclusion as to the meaning to be given to this section, it must be considered in

---

*After the foregoing opinion was delivered, at the June term, 1870, the term of office of Mr. CHIEF JUSTICE BREESE having expired, Mr. JUSTICE LAWRENCE, being the oldest Justice in commission, became Chief Justice.

connection with the next, or thirteenth section of the same act. That provides that, before any person claiming the benefit of the act, shall be allowed to enter the land occupied by him, he shall make an affidavit before the register or receiver, stating certain facts, one of which is, that he has not made a contract with any person, by which the title to be acquired by him from the government, will cnure in whole or in part, to the benefit of any person except himself. The section further provides, if he swears falsely in the premises, he shall forfeit the money which he may have paid for the land, and his right and title to the land, and any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, for a valuable consideration, shall be void.

We think it evident, from these two sections considered together, that the government was seeking to protect itself against claims under settlements not made in good faith for the purpose of occupancy by the settler himself, but made with a view of securing the title of desirable lands for speculators. In order to accomplish this, the twelfth section makes null and void all assignments " of the right hereby secured" before the patent issues. What is " the right hereby secured," referred to in this phrase? It is simply the right of preëmption—the right to purchase the land at the government price, in preference to any other person, and before it is offered at public sale. Any transfer of that right is forbidden, and any contract made before the purchase from the government is completed, by which the settler should agree to convey his title, when acquired, to another, would be void. While the twelfth section refers simply to the right of preëmption existing in the settler, before the preëmption or purchase is actually made, and applies to such right the appropriate words " transfer" and " assignment," the thirteenth section, in declaring the penalty for a false affidavit, provides for a forfeiture both of the money and of the title to the land, unless it has passed into the hands of an innocent purchaser. The conveyance which is pronounced void in this section in case of perjury, and if not made to an innocent

purchaser, is not a transfer of the right of preëmption referred to in the twelfth section, but a conveyance of the title acquired by the purchase, and hence the use of the appropriate words "grant" and "conveyance." · Hence, too, the exception in favor of innocent purchasers. A person buying after the land has been entered, whether before or after the patent is issued, would be an innocent purchaser if buying without knowledge that the affidavit was false, and hence his rights are saved. But there is no saving clause for innocent purchasers in the twelfth section, because in the transfer of the mere right of preëmption, before the land is entered, there can be no innocent purchaser. The purchaser buying only a right of preëmption, would be chargeable with knowledge that he bought in violation of the law.

The error in the argument of counsel for appellee lies in the assumption that the right, the transfer of which is pronounced void by the twelfth section, refers not only to the right of pre-emption, but also to the title acquired by the actual purchase of the land, the payment of the money therefor, and the receipt of a certificate of entry. The only ground for such a construction is the use of the phrase, "prior to the issuing of the patent," in the clause forbidding the assignment of the right. It is certainly an inaccuracy to speak of the right of preëmption as existing until the issuance of the patent, when the right has been exercised, and the person possessing it has made his proof, paid his money and received a certificate of purchase which would entitle him, by its express terms, to a patent, as soon as it should be presented to the commissioner of the general land office. Evidently the phrase was carelessly used, and must be construed as referring, not to the date of the actual issue of the patent, but to the time when the right to it actually accrues, that is, the time when the land is purchased. The words in the act are, in fact, surplusage, for any attempted assignment of the right of preëmption would necessarily be prior to the issuing of the patent, and also prior to the entry of the land.

That we are not mistaken in our understanding of what is meant by the right, the transfer of which is prohibited, is shown by recurring to the previous legislation of congress. In the third section of the preëmption act of 1830, we find the following words : " All assignments and transfers of the right of preëmption given by this act prior to the issuance of patents, shall be null and void." Here the right which is not to be transferred, is expressly defined. It is the right of preëmption. This act, by its terms, was to remain in force but one year, and in 1832, after the act had expired, another act was passed, containing but one section, which merely provided that certificates of purchase, issued under the act of 1830, might be assigned, and patents be issued in the name of the assignee. This act was doubtless passed to remove any doubts which might arise under the first act, and shows clearly that it was not the policy of congress to prohibit the transfer of certificates of purchase. These different acts will be found in the appendix to the second volume of Purple's Statutes.

It is incomprehensible that congress should have intended to prohibit the sale of lands by purchasers from the government until they had received their patents. Such a prohibition would have been not only grossly unjust, but, so far as we can see, without object. When government, by its officers, was duly satisfied of the right of preëmption, and had, in the mode pointed out by law, made sale of a tract of land and received the purchase money, it held the legal title only as trustee, and the purchaser was entitled to it as soon as the patent could be issued. But considerable delays would frequently and probably generally occur in the issuing of patents, and to prevent the owner of land for which he had fully paid from selling it until the patent should be received, would be to the last degree unreasonable. If it were conceded that the government could impose such a condition upon purchasers, and that it designed to do so, it should be construed merely as a condition of which the government alone could take advantage. But we have no idea the government intended to impose such a condition. As

a matter of fact, certificates of entry have always been considered assignable in this State, and by the fourth section of the chapter of evidence, they have been made evidence of legal title, on which recovery could be had in ejectment, either by the person making the entry, his heirs or assigns, unless a paramount title is shown.

We are of opinion the mortgage in this case, being made after Bunn entered the land and received his certificate, was not void under the act of congress.

We are also of opinion the defendants were not entitled to have the taxes paid by them made a prior lien to the mortgage.

The other points made on the re-argument fall within the principles announced in the former opinion. They relate to the right of preëmption litigated before another tribunal.

*Decree reversed.*