[No. 4352.]

EMILE HESTRES, ADMINISTRATOR OF THE ESTATE OF E. H. COMSTOCK, DECEASED, *v.* THOMAS BRENNAN, CHARLES L. CLEMENTS, ANDREW HARRIS, AND JOHN H. TONE, ADMINISTRATOR OF THE ESTATE OF DAVID T. HOPKINS, DECEASED.

POWER OF SECRETARY OF INTERIOR IN RELATION TO PUBLIC LANDS.—The Secretary of the Interior, in reviewing the decisions of the Commissioner of the General Land Office in relation to the sale of public lands, exercises a supervisory rather than an appellate power in the sense in which the term appellate is employed in defining the powers of courts of justice.

IDEM.—In the exercise of such supervisory power, the Secretary of the Interior may approve, modify or annul the acts, proceedings and decisions of the Commissioner of the General Land Office, whenever certified to him, without the formality of an appeal.

IDEM.—But even if the power of the Secretary of the Interior over the decisions of the Commissioner is to be regarded as appellate, the statute has not provided the machinery for taking an appeal, and consequently that matter is subject to such rules and regulations as the department may prescribe, and if the Commissioner of the General Land Office transmits the papers to the Secretary of the Interior, the presumption is that they were regularly and properly transmitted.

IDEM.—After a person claiming to be a pre-emptor has filed his declaratory statement, and has been permitted to pay for the land, and has received a certificate of purchase under the ruling of the Commissioner of the

General Land Office, the Secretary of the Interior may direct the entry to be cancelled and annul the purchase, and after his decision the pre-emptor ceases to have any right or title to the premises.

APPEAL from the District Court, Fifth Judicial District, County of San Joaquin.

Action of ejectment commenced on the 7th day of April, 1872, to recover the south half of section six, and the north half of section seven, in township two north, range eight east, Mount Diablo meridian. The defendants answered, setting up that they were severally in possession of a quarter of the section sued for, and that each entered as a pre-emptor, and that at the time of entry the land was public land. The cause was tried by the court without a jury. The plaintiff's intestate died on the 24th of January, 1862. The court found that before the entry of defendants, said intestate was in the possession of all the demanded premises except a tract of eighty acres; that on the 30th of November, 1860, the defendant Clements entered upon the southeast quarter of section six, and on the same day, David T. Hopkins, the intestate of defendant Tone, entered upon the southwest quarter of section six; that defendant Harris entered upon the northeast quarter of section seven, on the 28th day of November, 1861, and that defendant Brennan entered upon the northwest quarter of section seven, on the 22d day of November, 1860; that Hopkins filed his declaratory statement December 1, 1860, and defendant Clements filed his the same day; that Brennan filed his declaratory statement March 1, 1861, and that defendant Harris filed his on the 13th day of December, 1861, and that they each possessed the requisite qualifications of pre-emptors, and performed every act necessary to acquire a pre-emption right. That, on the — day of December, 1863, the register and receiver of the local office permitted Harris, Clements and Brennan to make proof as pre-emptors, and enter the respective quarter sections claimed by each, and issued to each his certificate of purchase. That, on the 6th day of February, 1867, the Commissioner of the General Land Office directed the entries of Harris, Clements and Bren-

nan, and the filing of Hopkins, to be cancelled. That, on the 19th day of February, 1861, the State of California issued to H. S. Sargent a certificate of purchase for the north half of section seven, and to H. N. Pease a certificate of purchase for the south half of section six, and that Sargent and Pease each assigned to Comstock in his lifetime. The court also found that, on the 26th day of November, 1860, all of said land was selected by the State of California, in pursuance of the eighth section of the act of Congress, approved September 4, 1841, entitled "An Act to appropriate the proceeds of the sales of the public lands, and to grant pre-emption rights," and that the selections were, on the 1st day of January, 1867, approved by the Secretary of the Interior, and were, on the 8th day of February, 1867, listed to the State by the United States. Judgment was rendered for the plaintiff on the findings.

On the trial, the plaintiff proved Comstock's prior possession, and then introduced in evidence the various papers issued by the State land officers, culminating in the certificates of purchase to Sargent and Pease, and their assignment to Comstock. The defendants then introduced testimony to show their qualification as pre-emptors, and their entry as such, as found by the court, and their declaratory statements, and that the land had been surveyed by the United States before the entry of the defendants. The defendants then introduced in evidence the papers from the United States Land Office, showing that in December, 1861, Sargent and Pease contested the right of the defendants to prove up their pre-emption claims, and that the Register and Receiver disagreed in their opinions, and the cases were transferred to the Commissioner of the General Land Office for his decision, and that, on the 3d day of July, 1862, the State selection of the land had been rejected by the Commissioner, and that, for said reason, the Commissioner, on the 17th of October, 1863, allowed the pre-emptors, Clements, Brennan and Harris, to prove up and enter the respective tracts claimed by each.

The plaintiff then, in rebuttal, introduced in evidence the certificates of the State locating agent, showing that, No-

vember 26, 1860, he located the land for the use of Sargent and Pease, and the decision of the Secretary of the Interior, rendered February 1, 1867, reversing the decision of the Commissioner permitting the defendants to prove up and enter, and the order of the Commissioner, made February 6, 1867, cancelling the cash entries of Harris, Brennan and Clements, and the filing of Hopkins. By the decision of the Secretary of the Interior, it appeared that the Commissioner had transmitted the papers to his office January 3, 1866, but there was no evidence that the heirs of Comstock or the administrator had taken an appeal from the decision of the Commissioner. The Secretary of the Interior also decided that the State selections were valid. It was on this ground that he reversed the decision of the Commissioner in relation to the pre-emptors. The defendant objected to the foregoing papers; first, because it appeared from the evidence that no appeal was ever taken from the decision of the Commissioner to the Secretary of the Interior, and without such appeal the Secretary had no jurisdiction of the case; second, because it was not in the power of the Secretary of the Interior, by any act of his, to alter the title of defendants after they had bought and paid for the land in controversy and got their certificates of purchase; third, because these papers were issued long after the commencement of this suit, and no supplemental complaint had ever been filed.

The court overruled the objections. The court below granted a new trial, and the plaintiff appealed from the order.

*J. H. Budd and Hepburn Wilkins,* for the Appellant.

The State certificates of purchase were *prima facie* evidence of title. (Session Laws of 1859, 227, Sec. 1; Id. 1863, 591, Sec. 17; Id. 1868, 508, Sec. 4.)

The repealing clause of said act of 1868 (p. 530, Sec. 71), expressly provides that the provisions of that act are not to affect legal or equitable claims then existing, or suits then pending. This action was commenced April 17, 1862.

Even conceding that these certificates were not compe-

tent as evidence when admitted as such on the trial, they certainly were competent as evidence when the new trial was granted on the 5th of May, 1874. (Code of Civil Procedure, Sec. 1925.)

A new trial will not be granted on account of the admission of incompetent evidence, when such evidence is competent under laws existing at the time the motion is ruled on, since a new trial would not accomplish any useful purpose. (*Pugh* v. *McCormack*, 14 Wall. 361.)

Unless defendants claim title from the State, they cannot question the regularity of the proceedings under which plaintiff claims title from the State. That is a matter solely between the State and its grantees, with which defendants have no concern. (*Cooper* v. *Roberts*, 18 How. U. S. 173.)

In rebuttal of defendants' claim of title to the land, the plaintiff produced in evidence the decisions and orders of the Secretary of the Interior and of the Commissioner of the General Land Office, cancelling the entries of the defendants, Brennan, Clements and Harris, and the filing of Hopkins, and listing the lands to the State of California.

These officers have the supervision and control of the acts of United States Registers and Receivers, whether the matter be brought to their attention by appeal or othewise; and their determination of matters of fact cannot be reviewed in the courts. (*Hosmer* v. *Wallace*, 47 Cal. 461.)

These officers decided, as a matter of fact, that the State's selection of the land was prior to the defendant's claim to the land as pre-emptors.

The only way in which the courts can reach a title issued by the United States through its proper officers, is through a bill in equity to control the title after it is issued, for the benefit of the persons who are in equity entitled to it. (*Johnson* v. *Townley*, 13 Wall. 72.)

*George W. Tyler*, for the Respondent.

The State law provides that the title of the State in such cases shall pass by the patent and not by any certificate of purchase. (1 Hittell's Digest, Arts. 3995 and 4047.) The last section referred to provides that "such patent shall vest in

the grantee therein named, a good and valid title in fee simple" to the lands therein described.

On a previous appeal in this case (37 Cal. 386), this Court decided that the patent could not be relied upon in this suit, because it was issued after the commencement of the suit. It seems to me, therefore, that the only reliance the plaintiff has, is that of the prior possession of his intestate.

Upon the same principle, decided upon the previous appeal, the court below clearly erred in admitting in evidence the papers from the office of the Secretary of the Interior, issued after this suit was commenced.

No appeal was ever taken from the decision of the Commissioner to the Secretary of the Interior.

The Secretary of the Interior had no jurisdiction to inquire into the matter without an appeal. (Act of Congress, approved September 4, 1841, Sec. 1, as amended in 1858; see act of Congress, approved June 12, 1858; Lester's Land Laws, p. 299.)

*T. I. Bergin,* for the Appellants, in reply.

By the Court, RHODES, J.:

The new trial was granted on the ground that the court erred in admitting in evidence the proceedings had in the office of the Secretary of the Interior, after the issuing to the defendants of their certificates of purchase. The defendants claimed the right of pre-emption, and had filed their declaratory statements before the commencement of the action, and certificates of purchase had been issued to three of the defendants before the filing of the answers. The right of the defendant to purchase the lands was contested by the plaintiff's intestate, and in 1867 the Secretary of the Interior ordered the certificates of purchase, which had been issued to three of the defendants, and the declaratory statement filed by Hopkins, the other defendant, to be cancelled. The determination and order of the Secretary of the Interior was in effect, that the defendants never had the right of pre-emption to those lands—not that the

right, which they once possessed, had by some means been lost or destroyed.

The act of Congress establishing the Department of the Interior, confers upon the Secretary the supervision of public business relating to several subjects, among which is that of the public lands. The Commissioner of the General Land Office is vested with authority to perform executive duties appertaining to the survey, sale, etc., of the public lands, "under the direction of the Secretary of the Interior;" and the subordinate officers of the Land Department are subject to the supervision of the Commissioner. (Revised Stats. U. S., Secs. 441, 453 and 2478.) Both the Secretary of the Interior and the Commissioner, in revising the acts of the subordinate officials of the Land Department, exercise supervisory rather than appellate power, in the sense in which the term appellate is employed in defining the powers of courts of justice. The Secretary of the Interior, in the exercise of such authority, may approve, modify or annul the acts, proceedings and decisions of the Commissioners.

If, however, this power is to be regarded as appellate power, in a legal sense, it will be observed that the statute has not provided the machinery for the taking of an appeal; and consequently that matter is subject to such rules and regulations as the Department may prescribe. In this case it appears that the papers in the contest were transmitted to the Secretary of the Interior by the Commissioner of the General Land Office; and in the absence of any showing to the contrary, it will be presumed that they were regularly and properly transmitted. We see no ground on which the decision and order of the Secretary can be questioned, and, in our opinion, it definitely determines that the defendant had no legal right or title to the premises. The circumstance that the decision of the Secretary of the Interior was made after the filing of the answers, neither renders it inadmissible, nor impairs its effect as evidence.

The other grounds of the motion do not require any special notice.

Order reversed and cause remanded.