SULLIVAN, C. J.
This is an action in ejectment, brought by the plaintiff against the defendant, to recover possession of certain real estate situated in the county of Bear Lake, in this state. The complaint is the ordinary one in an-action of ejectment. The answer is a general denial of the allegations of the complaint, and sets up that defendant is in possession of said land under a homestead entry. The pleadings are not verified. The case was heard in the court below upon the following stipulation of facts: “In the above cause it is stipulated and agreed that the facts are as follows: That -about the month of August, 1884, Lauritz Neilson made pre-emption declaratory statement No. 1362, embracing the land in controversy in this cause, and on the first day of October, 1885, made his pre-emption entry and final proof for the land embraced in his declaratory statement, being the lands in controversy in this case and in the ease of S. P. Sorrenson v. Emil Meyers, post, p. 61. That he, on that day, purchased said land, and paid $200 therefor, and took patent certificate for the same. That on the twenty-eighth day of October, 1886, said Lauritz S. Neilson, together with his wife, Catharine Neilson, by deed of conveyance duly executed and recorded, conveyed the lands described in the complaint to the plaintiff, Thomas W. Jones. That said Thomas W. Jones has never conveyed any of said land to any other person. That said, conveyance to Thomas W. J ones was made in consideration of the sum of $200, which had been paid in the month of June or July, 1886. That said purchase was made in good faith by said purchaser on June 7, 1886. That the defendant filed an affidavit in the United States land office at Oxford, Idaho, charging that Lauritz S. Neilson had failed to comply with the requirements of the pre-emption law in the matter of residence and improvement of said land, previous to his final proof and payment therefor. That Neilson was notified by the officers of the United States land office that a day had been set for hearing, *54 to determine the question as to whether his final entry should be canceled on account of the fraud charged. That Neilson ignored this notice, and did not endeavor to resist such cancellation, if it could be made. That the defendant appeared at the dime appointed, August 10, 1886, and offered his evidence; and dhat afterward, on the twenty-fourth day of January, 1887, an 'order was made by the officers of the land department of the United States canceling the final entry of Lauritz S. Neilson; and thereafter, on the twenty-fifth day of January, 1887, the defendant, Emil Meyers, made homestead entry upon said land, which was accepted by the land department of the United States, and the proper certificate issued. That the defendant, Emil Meyers, took possession of the land mentioned in the complaint on the twentieth day of January, 1887, and has ever since had possession of the same. That a reasonable rent for the .premises described in the complaint during the time that the defendant has been in possession is $150. That the damage to the plaintiff, being ejected from the land, is one dollar; and it is agreed, in case the plaintiff recover in this case, that he shall recover one dollar damages for the taking of the placo by the defendant, and $150 damages for rent during the time he has been excluded therefrom by the defendant. It is further agreed that said Neilson had not resided upon the said land six months prior to his making said final proof, and did not reside upon the land at the time he made said proof.”
It is admitted that Lauritz S. Neilson, the grantor of plaintiff, entered the land in question under and by virtue of the pre-emption laws of the United States, and that at the time he made his final proof and received his final receipt or certificate from the receiver he had not resided upon said land six months, •and did not reside thereon at the time of making said final proof. It is conceded by appellant that the final certificate was ■procured illegally and fraudulently, but appellant contends that the land department of the United States has no authority to ■cancel an entry where final certificate has been issued, and the land described therein sold to such a purchaser as the stipulation of facts shows appellant to be. It is admitted that respondent entered a contest to set aside Neilson’s entry in June, 1886. It is also admitted that appellant purchased the land in ques- *55 lion from Neilson in June, 1886, and paid him therefor in June or July, 1886, but that said Neilson did not execute a deed of conveyance conveying said land to the appellant until October 28, 1886. Neilson was duly notified that said contest was set for hearing August 10, 1886, but failed to appear and defend. The respondent in this cause introduced his testimony at said hearing, and thereafter said entry was canceled by the proper officer of the land department. The question, then, is, Had the land department, under the facts of this ease, the authority to cancel said entry? The Secretary of the Interior is given by law the entire supervision of the survey and the sale of the public lands. The commissioner of the general land office is by law required to perform, under the directions of the Secretary ■of the Interior, all executive duties appertaining to the survey and sale of the public lands of the United States. The registers and receivers are but local officers of the several land districts, charged with the performance of certain duties, and subject to the direction and supervision of the commissioner of the general land office and Secretary of the Interior. From the organization of the land department of the United States down to the present time it has been held by that ■department (and by the supreme courts of numerous states ana territories) that it had the right and authority to cancel all entries of public lands upon a proper showing, made prior to the issuance of a patent, if the entrymen had failed to comply with the law, and had procured final receipt or certificate upon false proof. (In re Cogswell, 3 Dec. Dep. Int. 23, and authorities there cited; Hosmer v. Wallace, 47 Cal. 461; Figg v. Hensley, 52 Cal. 299; Hestres v. Brennan, 50 Cal. 211; Vance v. Kohlberg, 50 Cal. 346; Randall v. Edert, 7 Minn. 450 (Gilm. 359); Gray v. Stockton, 8 Minn. 529 (Gilm. 472); Judd v. Randall, 36 Minn. 12, 29 N. W. 589; Bellows v. Todd, 34 Iowa, 31; McLane v. Bovee, 35 Wis. 27; Franklin v. Kelley, 2 Neb. 79; Hays v. Parker, 2 Wash. 198, 3 Pae. 901.) We have examined the ■cases cited by counsel for appellant and many other cases nor ■cited, and, with the exception of Smith v. Ewing, 23 Fed. 741, have been unable to find any case that sustains the view taken by appellant. The decided weight of authority is clearly against the position contended for by appellant. The appellant cites *56 Cornelius v. Kessel, 58 Wis. 237, 16- N. W. 550, as holding that the commission had no power to cancel a final certificate. The court says: “The land was then subject to entry. It was purchased by him, and paid for. There was no fraud or mistake in the transaction.” In the case at bar it is admitted that the entryman had not complied with the law; that he had not resided upon the land six months, and was not residing there at the timeJie made his final proof. The case at bar differs from the one last above cited in this: in that case, there was no mistake of fraud; in this, there appears to have been perjury committed in making the final proof, and by such perjury a fraud was committed upon the land department. The appellant also cites United States v. Minor, 114 U. S. 233, 5 Sup. Ct. Rep. 836, as an authority in this ease. It was held in that case that, where the land department had issued a patent upon false and perjured affidavits, the "United States is not precluded from instituting a suit in equity to cancel such patent. It does not conflict with former decisions of said court, in which it has been held that the decisions of the land department upon questions of fact and mixed law and fact are conclusive.
Appellant contends that the supreme court of tbe United States in Myers v. Croft, 13 Wall. 291, holds that a sale by a preemptor, after entry and final proof and the issue of a final certificate to a Iona fide purchaser for a valuable consideration, conveys to the purchaser a valid, legal title. The court in that case in no respect intimates that the grantee of a pre-emptorwould get any better title than his grantor had, or that any title would pass if the grantor had not in good faith, and in full compliance with the requirements of the pre-emption law, entered the land eonvsyed. The concluding portion of said' opinion indicates very strongly the contrary opinion. The court, says: “If it had been the purpose of Congress to attain the object contended for, it would have declared the lands themselves unalienable until the patent was granted. Instead of this, the legislation was directed against the assignment or transfer-of the right secured by the act, which was the right of preemption, leaving the pre-emptor free to sell his land after-entry, if at that time he was in good faith the owner of the land, and had done nothing inconsistent with the provisions of *57 the law on the subject.” (Myers v. Croft, 13 Wall. 297.) It, will not be contended for a moment that Neilson, appellant’s grantor, was in good faith the owner of the land in question when he sold the same to the appellant. The case of Carrol v. Safford, 3 How. 441, cited by appellant, proceeds upon the theory that the government has no right to refuse a patent to a lona fide purchaser of land offered for sale. The court says: “But where there has been fraud or mistake the patent may be withheld, and every other purchaser at tax sale incurs the risk as to the validity of the title he purchases.” The case of Brill v. Stiles, 35 Ill. 309, 85 Am. Dec. 364, is cited by the appellant as holding that the commissioner has no power to cancel the final certificate, and that his doing so is void. The court says: “If the entry was authorized by law, the title passed to him, subject to be defeated by the proof of a right of pre-emption; and, if unauthorized, he acquired no title. But until it was shown to have been illegally made, or to have been defeated by proof of a pre-emption, the certificate of purchase was evidence of an equitable title.” There may be some apparent conflict in the Illinois decisions, but in the case of Robbins v. Bunn, 54 Ill. 48, 5 Am. Rep. 75, the court has clearly shown that there is no conflict in the decisions of that state upon this question. The court says, after citing Brill v. Stiles, supra, and other decisions : “These two classes of cases may seem at first inconsistent with each other, and there are probably some expressions in the various opinions not strictly harmonious, but on further consideration it will be seen there is no real antagonism in the decisions. The cases in the first class relate to pre-emption claims upon which the land offices have decided. The pre-emption law of 1830 required proof of the facts upon which the right of pre-emption depended to be made to the satisfaction of the register and receiver, agreeably to rules to be prescribed by the commissioner of the general land office. This, by implication, gave them the right to decide all cases of contested preemption, so far as they depended upon the facts of prior settlement; and this construction has been uniformly given to the' law, as will be seen by the cases before cited and in other authorities quoted in the opinions pronounced in these cases. The finding of the land officers upon the facts in matters of pre *58 eruption has been held conclusive by the courts, upon the familiar ground that such officers, in these proceedings, were acting in a quasi judicial capacity, and within the scope of their authority. But, on the other hand, when these officers have undertaken to cancel a patent or a certificate of entry for which a purchaser has paid his money, either at their discretion, or under some patented regulation of the department which the law did not authorize, or under some clearly erroneous construction of the law of Congress, the courts have held themselves not bound by such acts of the officers of the land department, because they were not exercising a judicial function within the limits prescribed by law. The cases cited by counsel for defendant will be found to relate to proceedings of this character. Between those two classes of authorities there is a clear and sound distinction. In the one,- thé proceedings of the land offices are held conclusive, because judicial in their character, and within their conceded jurisdiction; in the other, such proceedings are held not conclusive, because they are either ministerial in their character, or, if judicial, beyond the authority given by'the acts of Congress." In Starts v. Starrs, 6 Wall. 402, it is claimed that the supreme court of the United States holds that “a right to a patent once vested is treated by the government when dealing -with the public lands as equivalent to a patent issue." This ease arose under what is known as the “Oregon Donation Act," and under that act the right of the claimant to a patent became-perfected when the certificate of the surveyor general and accompanying proof were received by the commissioner of the general land office, and he found no valid objection thereto. In that ease the law had been fully complied with by the claimant, but the commissioner objected to issuing the, patent to Stark upon the ground that the land was brought under the operation ■of the “townsite act,” and was not subject to disposition under ■said “donation act." If the “donation act” of 1850 was applicable to the lands, Stark’s right to a patent became perfect when the certificate of the surveyor general and accompanying proof showed, in the judgment of the commissioner, a compliance with its requirements. In that ease the commissioner’s objection to the issuance of a patent arose, not from any defect in the certificate or proof, but from an opinion that the lands were sub *59 jeet to the provisions of the “townsite act” of 1844. How very different from the case at bar! The appellant’s grantor had not complied with the requirements of the pre-emption law. Through false proof he had obtained a final certificate. A hearing was ordered long before the appellant received a deed of conveyance from his grantor, and, had the appellant examined the records of the land office at Oxford, Idaho, he would have found a contest pending to set aside his grantor’s entry at least four month before said deed of conveyance was executed. If an entryman can through false proof pre-empt land, and, as soon as he obtains his final certificate, sell the same, and convey a valid title, it seems to us that it would “open wide the door to frauds innumerable and to an extent almost incalculable.” Until the patent issues, we think that the rule caveat emptor applies with peculiar force to purchasers of land from pre-emption entrymen.
Chief Justice Tripp, of Dakota, in the case of United States v. Edward H. Dudley, 1887 (not reported), rendered an exhaustive opinion as to the authority of the land department to cancel a final certificate issued to a pre-emptor, in which he reviews and comments upon numerous decisions of the supreme court of the United States and decisions of the highest courts of many of the states and territories, and arrives at the following conclusion, to wit: “I am clearly of the opinion that the supervisory and appellate powers vested in the Secretary of the Interior, and the commissioner of the general land office, under' his direction, gives them the right to examine all acts of the register and receiver. In matters of fact left to the determination of the local officers, the jurisdiction of the secretary and commissioner may be exercised by appeal and a re-examination of the fact themselves, or by examination of their action, and requiring them again to examine the questions of fact involved, and in all cases to supervise the purely administrative or executive acts of the local officers.” The power of supervision given the secretary and commissioner is a general one over all the acts of the register and receiver. There is no exception made in the matter of the issuing of final certificates; and, if the position here contended for be the correct one, to wit, that the commissioner must issue a patent at once upon the *60 presentation of the certificate, and that issue of the certificate would conclude all inquiry into matters settled by its issue, then it would conclude all supervision by the superior officers; and on that reasoning the patent might as well issue by the local as by the supervisory officers. I am led to adopt the contrary of this reasoning. Besides, any other view would lead to hopeless conflict between the department and the courts. Our calendars would be crowded with land contests, and the action of the department would be indefinitely postponed. The only true doctrine, in my opinion, is that announced by the supreme court — that the jurisdiction of the court commences when that of the department ceases; and that, until the patent issues, and while the matter is still pending before the department, the question is not one of private right upon which the courts have power to act. We are of the opinion that if a pre-emptor has not complied with the law, and procures a final certificate through fraud or perjury, a purchaser from him gets no better title than such pre-emptor obtained, and, if such fraud or failure to comply with the law is established to the satisfaction of the land department, under its rules and regulations, before patent has been issued, the land department has the authority to cancel .such certificate. (In re Cogswell, 3 Dec. Dept. Ins. 23, and authorities there cited.) Those decisions which hold that a final certificate is equivalent to a patent issued proceed upon the theory that the pre-emptor has complied with the law as to residence and improvement and all other requirements, and that such certificate was not procured through fraud or perjury. The judgment of the court below is affirmed, with costs.
Huston and Morgan, JJ., concur.