## STIMSON v. CLARKE.

*(Circuit Court, D. Washington, N. D.    April 10, 1891.)*

PUBLIC LAND—CANCELLATION OF ENTRIES.
> The power of the commissioner of the general land-office to cancel entries of pub-
> lic lands after final proof has been made and a final certificate issued, extends only
> to cases of entries made upon false testimony or without authority of law; and
> the decisions made in the land department are only conclusive in so far as they
> relate to pure questions of fact unmixed with conclusions of law. In a suit for an
> injunction to prevent waste, *held*, upon exceptions for insufficiency, to a plea al-
> leging cancellation of the pre-emption entry under which the plaintiff claims the
> land pursuant to a decision of the secretary of the interior in a contest proceeding
> initiated after final proof, that such a decision 'containing no special or separate
> findings of fact, and only a declaration to the effect that the pre-emptor "had not
> made his filing, application, and entry in good faith to appropriate the land to his
> own use and benefit, as required by law," and that he had not "made the necessary
> residence, cultivation, and' improvement to entitle him to enter said land," is *not*
> conclusive upon the courts, and that the plea is insufficient.

In Equity.
*Jacobs & Jenner*, for plaintiff.
*D. O. Finch*, for defendant.

HANFORD, J.   The complainant claims ownership of certain land by
virtue of mesne conveyances from one who entered the same as public
land of the United States under the pre-emption law, and obtained a
final receipt or patent certificate from the land-office of the district in
which the lands are situated, after having made the affidavits, proofs,
and payment required by said law; and he brings this suit for an injunc-
tion to restrain the commission of waste upon said land by the defend-
ant.   The legal title to the land is in the government, no patent having
been issued.   The defendant is in possession, claiming the right to ac-
quire title thereto by residence and cultivation under the land laws of
the United States.   As against the prior entry of the plaintiff's grantor
the defendant in his answer makes the following plea:

"That the special agent of the land department, in his report as to said en-
try and filings of the said William Carley, charged that the same was not
made in good faith to appropriate the said land to his own exclusive use and
benefit, as required by law; and that the said pre-emptor, William Carley,
had failed to comply with the law in the matter of the settlement, cultivation,
and improvement of the land.   That upon the investigation had upon notice
and appearance of the parties as hereinbefore alleged, the register and receiver
of the land-office found as a matter of fact that the charges so made by the
special agent of the land department were true, and held the said entry for
cancellation; and that upon appeal the commissioner of the general land-office
affirmed the findings of the register and receiver; and that upon appeal to the
secretary of the interior the said secretary by his decision rendered on the 2d
day of March, 1889, affirmed the rulings of the register and receiver and com-
missioner of the general land-office, and held the entry of the said William
Carley for cancellation for the reasons—*First.* That said Carley had not made
his filing, application, and entry in good faith to appropriate the land to his
own use and benefit, as required by law.   *Second.* That the said Carley had
not made the necessary residence, cultivation, and improvement to entitle
him to enter said land; and that, in accordance with said findings, ordered the
said entry canceled, and that the same be restored to sale to the first legal appli-

cant; and that by reason of said findings and said order the said entry was duly canceled in accordance with the rules and regulations of the land department, as prescribed by the commissioner of the general land-office and the secretary of the interior."

The plaintiff has filed exceptions to this part of the answer for insufficiency; and upon the questions so presented the case has been argued and submitted. By the above plea no issue is tendered as to whether in fact the entry alleged to have been canceled was subject to cancellation by reason of any false affidavit or other representation having been made by the entry-man, or any other fraudulent act on his part in procuring the allowance of his entry at the local land-office, or, by reason of non-fulfillment on his part in good faith of all the terms, conditions, and requirements of the pre-emption law; but it is assumed that the decision of the officers of the land department set forth in the plea is conclusive. The defense as pleaded rests—*First*, upon the proposition that the officers of the land department are by law vested with power to decide finally and conclusively all questions of fact affecting rights claimed under the land laws relating to the disposal of the public lands; and, *secondly*, the assumption that in deciding the main issue as to the lawfulness of the entry under which the plaintiff claims the land in controversy in this case those officers have necessarily passed upon, and so decided finally and conclusively, all questions of fact touching the plaintiff's rights in the premises, and that such decision therefore amounts to a finding of facts sufficient to warrant the canceling of the entry; and, *thirdly*, the conclusion that therefore the parties and the courts are bound by the action of said officers, so that there can be no further inquiry as to whether the plaintiff did or did not in good faith settle and reside upon and cultivate and improve the land; nor as to whether he did or did not, in making his final proof, make or procure to be made any false representation or statement, or commit any fraudulent act in obtaining the patent certificate. No person will seriously contend that any scheme to obtain title to land from the government by fraud, or without full compliance with the requirements of the land laws, ought to succeed or be protected by the courts; and, on the other hand, the thought of judicial protection to fraud is not more abhorrent to an honest mind than the idea that an honest settler upon public land, who in good faith has fully performed all the conditions prescribed by law, and paid the government in full its price for a tract of land, can be convicted of fraud, and on that ground subjected to the loss of the land and the forfeiture of the money paid therefor, without a trial or opportunity for defending against an unjust accusation other than a contest in the land department. In such proceeding, the officers have no power to issue process to bring the witnesses necessary to establish the truth, and the only evidence that can be produced is that of willing or paid witnesses; and the manner in which such contests are conducted involves such enormous expense that an honest man of moderate means cannot reasonably hope to prevail against an adversary possessed of greater wealth and not incumbered with a conscience.

The constitution of the United States is the paramount law of this land, and among the most sacred of its guaranties is the provision that no person shall be deprived of life, liberty, or property without due process of law. The decisions of the supreme court establish the doctrine that a tract of land may be segregated from the body of the public domain and become the property of an individual, and as such, subject to all the incidents of private ownership, including taxation by the local government, without a formal conveyance of the legal title, by the issuance of a patent. By full compliance with the requirements of the statutes on the part of a claimant or purchaser from the government his rights and responsibilities as owner of the land become perfect. Now, if afterwards he may be divested of all his rights as owner of the property, and also deprived of the purchase money by a decision of the officers of the executive branch of the government by reason of charges of fraud supported only by the testimony of volunteer witnesses, while he is denied compulsory process, necessary perhaps to obtain the only testimony by which such volunteer witnesses can be contradicted and the truth established; and if, upon an appeal to the courts, he is denied a hearing,—can it be said that he has not been deprived of property, or that he has had the benefit or the protection of due process of law, or that the constitution has not been disregarded in his case? In the argument it is insisted that such and similar inquiries are all answered affirmatively by numerous decisions of the courts. It is true that there are a number of decisions so holding by state and territorial courts, in which the opinions are predicated upon what are assumed to be the conclusions necessarily deducible from rulings of the supreme court of the United States. This court recognizes the binding authority of the decisions of the supreme court, and will unhesitatingly follow them; but from my examination of the cases I do not find the doctrine supported. In the case of *Cornelius* v. *Kessel*, 128 U. S. 461, 9 Sup. Ct. Rep. 122, the views of the court are thus stated:

"The power of supervision possessed by the commissioner of the general land-office over the acts of the register and receiver of the local land-offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the land department. If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department. But the power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property, and a right to a patent therefor, and can no more be deprived of it by order of the commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it."

It is true that in its opinion the court in so many words declares that power to cancel entries of public land, after final proof has been made and approved by the register and receiver and a final receipt issued, is vested in the commissioner of the general land-office; and in connection with this decision the recent decision in the case of *U. S.* v. *Coking Co.*, 137 U. S. 160, 11 Sup. Ct. Rep. 57, may also be considered, in which it is held that it is not necessary for the government to return the money paid as the purchase price for the land ·before an entry can be lawfully canceled; and also to consider the further proposition, established by the decisions of the court, that the decisions of the commissioner upon questions of fact made within the scope of his authority are not revisable by the courts, and still the decisions of the supreme court, up to the present time, do not enunciate or support any rule broad enough to sustain the defense pleaded in this answer. The power of the commissioner has limits, and in the case of *Cornelius* v. *Kessel* the limits are clearly defined. In the opinion of the court it is pointedly said that his power to correct and annul entries of land allowed by the district officers "can be exerted only when the entry was made upon false testimony, or without authority of law." The supreme court has never yet decided that in a contest proceeding instituted after an entry has been allowed, in which there is a conflict of evidence, the commissioner can make a decision adverse to the entry upon a mere preponderance of evidence, or that any decision of the commissioner stated merely in general terms, or as an ultimate conclusion to the effect that a party has not in good faith complied with the law so as to be lawfully entitled to make the entry, is such a decision as to justify the canceling of the entry or warrant any claim-jumper in wresting from another the fruits of years of toil. Until the court of last resort, in a proper case, does make such a decision, I cannot do so.

In this answer it is not alleged that the allowance of the entry under which the plaintiff claims was predicated upon false testimony, and no want of lawful authority for allowance of the entry is shown. In my opinion, it does not appear from the facts stated that it was within the power of any officer of the government to annul the entry made by plaintiff's grantor, or deprive plaintiff of his rights as owner of the land, and I therefore sustain the exceptions.