(61 N. W. Rep. 808.)

---

## OCTAVIA J. PARSONS *vs.* GUSTAV VENZKE.

Opinion filed December 12th, 1894.

### Commissioner of General Land Office—Powers.

The commissioner of the general land office has power to cancel an entry, but this power is not unlimited.

### Equity Will Correct Mistake of Commissioner.

When it has been exercised under a mistake as to the law to the injury of the rightful claimant, a court of equity will correct the error, and compel the holder of the patent to convey to the one who but for such mistake would have obtained the patent himself.

### Decisions of Land Department on Matters of Fact—Final.

The decision of the land department, so far as it relates to matters of fact involved in the cancellation of an entry, is binding on the courts, provided the parties interested have been heard, or have had an opportunity to be heard.

### Cancellation of Entry—Presumption.

The courts will presume that the power has been properly exercised, and it is therefore incumbent on one who is claiming the legal title, despite the cancellation of an entry, to prove that the entryman acted in good faith, and fully complied with the law. The mere fact that the proceedings may have been *ex parte* will not entitle him to relief, unless he was in fact entitled to a patent at the time the entry was canceled. The fact that he was not heard, and had no chance to be heard, merely gives him the right to prove in court the facts showing that he had earned the patent at the time the entry was canceled.

### Affidavit of Service—Knowledge of Hearing.

The failure to require the filing of an affidavit that the party to be served cannot be personally served is not fatal to the power of the department to act upon a mere publication of notice of the hearing, without personal service, where the party does in fact know of the hearing, and has an opportunity to be heard.

**Opportunity to be Heard—Rules of Department.**

> Whether the decision of the commissioner as to matters of fact will be regarded as binding by the courts depends upon general principles, and not upon the question whether the proceedings have been in conformity with the rules of the department which, having been made by the department itself, may be abrogated or disregarded by it. Disregard of rules which does not result in a denial of the right or in the loss of an opportunity to be heard will not affect the binding force of the decision. The most strict observance of all rules will not foreclose an investigation of the facts in court when, in the particular case, the right to hearing has been denied, or an opportunity to be heard has not been given.

**Courts Will Not Disturb Decision of Department—When.**

> When a full opportunity to be heard has been afforded, the courts will not disturb the decision of the commissioner because of errors relating to the burden of proof, the competence of evidence, or the weight of evidence.

**Bona Fide Purchaser—How Affected.**

> The commissioner's power to cancel an entry is not affected by the fact that the property has been transferred or mortgaged to a purchaser or mortgagee who parts with value, in good faith, without knowledge of the facts because of which the entry is canceled. But *quaere* whether such purchaser or mortgagee is debarred from proving the *bona fides* of the entry by proceedings in the land department, culminating in a cancellation of the entry, when he has no knowledge of such proceedings.

Appeal from District Court, Richland County; *Lauder,* J.

Action by Octavia J. Parsons against Gustav Venzke and others. From a judgment for defendants, plaintiff appeals.

Affirmed.

*J. E. Robinson* and *S. B. Pinney*, for appellant.

When a patent for land is issued by mistake, inadvertance or other cause to parties not entitled thereto, they will be declared trustee's of the true owner. *Johnson* v. *Towsley*, 13 Wall. 72; *Stark* v. *Stars*, 6 Wall. 402; *Lindsey* v. *Hawes*, 2 Black. 554; *Cornelius* v. *Kessell*, 128 U. S. 456; *Widdcombe* v. *Childers*, 124 U. S. 400; *Moore* v. *Robbins*, 96 U. S. 530; *Bernier* v. *Bernier*, 147 U. S. 242. An executive officer does not have power to forfeit land, when a qualified person makes final proof, purchase and payment therefor, in the form and manner prescribed by law, and when the land is subject to pre-emption. *Smith* v. *Ewing*, 23 Fed. Rep. 741; *Wilson* v. *Fine*, 40 Fed. Rep. 52; *United States* v. *White*, 17

Fed. Rep. 561; *Smith* v. *Camp*, 2 Minn. 155; *Ames* v. *Grimes*, 2 Ia. 1; *Sillyman* v. *King*, 36 Ia. 307; *Cady* v. *Eighmey*, 54 Ia. 618; *Brill* v. *Stiles*, 35 Ill. 305; *Aldrich* v. *Aldrich*, 37 Ill. 32; *Norton* v. *Blankenship*, 5 Mo. 346; *Mayer* v. *McCollough*, 1 Ind. 339; *Guynne* v. *Niswauger*, 15 Ohio 368; *Cornelius* v. *Kessell*, 58 Wis. 237, 128 U. S. 456; *Carroll* v. *Safford*, 3 How. 460; *Witherspoon* v. *Duncan*, 4 Wall. 210. By entry, which includes a purchase and payment the emptor acquires a vested interest in the property. *Hutchings* v. *Low*, 15 Wall. 77; *Cornelius* v. *Kessell*, 128 U. S. 461. It is contended that under the constitution and laws of the United States, judicial power to declare penalties and forfeitures rests in the courts and not in officers of the land department. Section 536, R. S.

The pre-emption right was a preference right to purchase a quarter section of land. In the absence of congressional inhibition it was assignable. *Treadgall* v. *Pintard*, 12 How. 24; *Myers* v. *Croft*, 13 Wall. 291; Proof was made in the form and manner required by law and the rules of the land department, and to the satisfaction of the register and receiver, the land was paid for and the usual duplicate receipt obtained. After such payment Simpkins title was that of a purchaser in possession. It may have been voidable but it was not void. *Brumley* v. *Goodrich*, 40 Wis. 134; *Crocker* v. *Balangee*, 6 Wis. 643; *Graham* v. *Ry. Co.*, 102 U. S. 157. Until divested of title the entry man or his grantees had a vested interest in the land. *Frisbie* v. *Whitney*, 9 Wall. 187; *Hutchins* v. *Low*, 15 Wall. 77; *Risdon* v. *Davenport*, 57 N. W. Rep. 482. A party cannot by his misconduct so forfeit a right, that it may be taken from him without judicial proceedings in which the forfeiture shall be declared in due form of law. Cooley's Const. Lim. 444; *Leck* v. *Anderson*, 57 Cal. 251; *Boorman* v. *Santa Barbara*, 65 Cal. 313.

Against a *bona fide* purchaser a fraudulent sale cannot be avoided. *Thurston* v. *Blanchard*, 33 Am. Dec. 700.

*S. H. Snyder* and *Curtiss Sweigle*, for respondent.

The inquiry here should be, had the commissioner or secretary the power to cancel the final certificate issued to Simpkins under

the facts as disclosed by the record in the case? "The power of supervision given the secretary and commissioner is a general one, a supervision over all the acts of the register and receiver. There is no exception made in the matter of issuing final certificates." *Vantongeren* v. *Hefferman*, 5 Dak. 180; *Swigart* v. *Walker*, 30 Pac. Rep. 162; *Dorcey* v. *McCarthy*, 12 Pac. Rep. 104; *Jones* v. *Meyers*, 26 Pac. Rep. 215; *Sorrenson* v. *Meyers*, 26 Pac. Rep. 218; *Judd* v. *Randall*, 29 N. W. Rep. 589; *Gray* v. *Stockton*, 8 Minn. 529; *Hosmer* v. *Wallace*, 47 Cal. 461; *Figg* v. *Hensley*, 52 Cal. 299; *Hestus* v. *Breman*, 50 Cal. 211; *Bellows* v. *Todd*, 34 Ia. 31; *McLane* v. *Bovee*, 35 Wis. 27; *United States* v. *Steenerson*, 50 Fed. Rep. 504; *Carr* v. *Fife*, 44 Fed. Rep. 713; *Lee* v. *Johnson*, 116 U. S. 48; *Knight* v. *United Land Ass'n*, 142 U. S. 160; *American Mortgage Co.* v. *Hopper*, 56 Fed. Rep. 67. The forfeiture provided for by statute is a forfeiture of the money paid. There is no such thing as a forfeiture of the land, since the title does not vest until the final action of the land department determines the existence of the conditions necessary to that result. *American Mortgage Co.* v. *Hopper*, 56 Fed. Rep. 74. Plaintiff is not a *bona fide* purchaser, she was charged with knowledge of the law, that the final certificate did not vest the title to the land in Simpkins, and was thereby put upon inquiry to ascertain whether or not the final proof of Simpkins was made in good faith. 1 Warvelle on Vendors, 266; *American Mortgage Co.* v. *Hopper*, 56 Fed. Rep. 67; *Randall* v. *Edert*, 7 Minn. 359. The purchaser of an equitable title, takes at his peril and acquires the property burdened with every prior equity charged upon it. *Shoupe* v. *Griffiths*, 30 Pac. Rep. 93. Where the matters to be determined by the department are questions of fact, or mixed questions of law and fact, the decision of the department is final and cannot be reviewed by the court. *Ard* v. *Pratt*, 23 Pac. Rep. 646; *Jeffords* v. *Hine*, 11 Pac. Rep. 351; *Ferry* v. *Strutt*, 11 Pac. Rep. 571; *Porter* v. *Bishop*, 6 So. 863; *Keane* v. *Riggers*, 28 Pac. Rep. 653; *Puget Mill* v. *Brown*, 54 Fed. Rep. 987; *Johnson* v. *Towsley*. 13 Wall. 73; *Shepley* v. *Cowan*, 91 U. S. 330; *Moore* v. *Robbins*, 96 U. S. 330; *Lee* v. *Johnson*, 116 U. S. 48.

CORLISS, J.   The plaintiff's theory of action, as disclosed by his
complaint, is not the one that was developed upon the trial.   The
complaint is framed under § 5449, Comp. Laws, to try an adverse
claim to plaintiff's alleged title.   The pleading contains an allega-
tion that the plaintiff is the owner in fee simple of the land in
question.   On the trial it appeared that the plaintiff was not the
owner in fee simple; that he did not pretend to hold the legal
title; but that, on the contrary, he was seeking by this action to
have the defendant, who held the legal title, adjudged to be a
mere trustee for the plainfiff as to such title, and to procure a
decree directing defendant to convey the same to the plaintiff.
The pleadings and the proof are not in harmony; but, as no point
has been made touching the failure of the plaintiff to establish
the cause of action he had alleged, we will consider the pleadings
as amended to conform to the evidence, and turn to the latter for
our guidance in determining whether the theory on which the
case was tried below and argued in this court can be sustained.

The defendant holds a patent for the land.   The plaintiff
claims under a pre-emptor whose certificate was canceled by the
commissioner of the general land office before defendant made
the entry on the land under which he obtained his patent.   The
question which confronts us at the very threshold relates to the
power of the commissioner to cancel entries which have been
allowed by the officers of the local land office.   In this connection
a more particular reference to the facts is advisable.   The entry
under which plaintiff claims was made by Willis B. Simpkins,
January 11, 1883.   In less than a month after he had received his
patent certificate, he conveyed the land to Charles J. Wolfe, who
sold the land to Jessie J. Russell, by whom it was mortgaged.
The plaintiff claims as a purchaser under the sale on foreclosure
of this mortgage.   These transfers and this mortgage were all
executed prior to the cancellation of Simpkins' entry.   After the
cancellation of this entry, the defendant entered the land as a
pre-emptor, and ultimately obtained a patent.   It is the legal
title under this patent which the plaintiff seeks to secure by this

action. If he is correct in his premise that the commissioner had no power to cancel the entry, or, assuming his power, that we can inquire whether it was properly exercised in this case, and from that inquiry conclude that it was not properly exercised, then it follows that the defendant must be deemed to hold the legal title in trust for him, and ordered to convey such title to him. Said the United States circuit court of appeals in a recent case: "No principle is more firmly established in American jurisprudence than that, after the title has passed from the United States to a private party, it is the province of the courts to correct the errors of the officers of the land department which have resulted from fraud, mistake, or erroneous views of the law; to declare the legal title to the lands involved to be held in trust for those who have the better right to them; and to compel their conveyance accordingly." *Bogan* v. *Mortgage Co.,* (May term 1894; 8th Circuit) 11 C. C. A. 128, 63 Fed. 192. To same effect, see *Bernier* v. *Bernier,* 147 U. S. 242, 13 Sup. Ct. 244; *Silver* v. *Ladd,* 7 Wall. 219; *Johnson* v. *Towsley,* 13 Wall. 72.

The first inquiry is whether this power of cancellation exists. The authorities are divided upon this question, but the great weight of the adjudications supports the power, and so does the better reason. *Holmes* v. *State,* (Ala.) 14 South 51; *Judd* v. *Randall,* (Minn.) 29 N. W. 589; *Mortgage Co.* v. *Hopper,* 56 Fed. 67; *Lewis* v. *Shaw,* 57 Fed. 516; *Jones* v. *Meyers,* (Idaho,) 26 Pac. 215; *Swigart* v. *Walker,* (Kan.) 30 Pac. 162; *U. S.* v. *Steenerson,* 1 C. C. A. 552, 50 Fed. 504; *Stimson* v. *Clarke,* 45 Fed. 760; *Bogan* v. *Mortgage Co., supra*; *Freese* v. *Scouten,* (Kan.) 36 Pac. 741; *McLane* v. *Bovee,* 35 Wis. 27; *Vance* v. *Kohlberg,* 50 Cal. 346; *Hosmer* v. *Wallace,* 47 Cal. 461; *Figg* v. *Hensley,* 52 Cal. 299; *Fernald* v. *Winch,* (Kan.) 31 Pac. 665; *Bellows* v. *Todd,* 34 Iowa, 31. See, also, *Harkness* v. *Underhill,* 1 Black, 316–325; *Barnard* v. *Ashley,* 18 How. 43; *Cornelius* v. *Kessel,* 128 U. S. 456–461, 9 Sup. Ct. 122. The argument employed to assail the existence of the power begs the whole question. It necessarily assumes that the power does not exist. The argument, in substance, urges the

sacredness of vested rights. But if the statute, when properly construed, vests the power of cancellation in the commissioner, it is idle to talk of vested rights which will interfere with the lawful exercise of this power. The government has not finally decided that the entryman is entitled to the land. The certificate merely evidences the fact that the local officers are satisfied that he has made out a good claim to the land. But if the commissioner has authority to investigate, and comes to a different conclusion, then the entryman has no vested rights which the commissioner takes away by canceling the entry. His claim is not vested, but contingent. Its validity depends upon its approval by the commissioner. If he disapproves it, it fails to become a vested right. The disapproval does not destroy; it merely prevents with respect to the claimant the existence of a vested interest in the land. Said the court in *Mortgage Co.* v. *Hopper*, 56 Fed. 67–74: "There is no such thing as a forfeiture of the land, since the title does not vest until the final action of the land department determines the existence of the conditions necessary to that result. There is no such thing as a forfeiture of an equitable estate or interest, since, as has been abundantly shown, it does not appear that the original entryman was ever invested with any such estate or interest. The alleged forfeiture is merely the exercise of an undoubted authority by the proper officers of the land office to cancel an entry made upon false testimony,—an authority so exclusive in such department that what is done under it in the decisions of questions of fact cannot be questioned anywhere else, unless such tribunal has been prevented by some fraud practiced from fairly trying the question." The question is purely one of power, and it is illogical to argue against its existence by a line of reasoning which rests ultimately upon a denial of the power as the basis of such reasoning. The question of vested rights is foreign to the inquiry. If there is power, there can be no vested rights which can defeat its exercise. If there is no power, then the question of vested rights is of no possible moment, as the want of power will defeat its exercise without

the aid of further argument. We do not wish to be understood as ignoring the doctrine that the entryman secures such standing before the law that the commissioner cannot illegally or arbitrarily cancel the entry. *Johnson* v. *Towsley*, 13 Wall. 72–85.

The state of the record will not, however, permit us to rest here. It is contended that, even conceding the existence of this power, it was improperly exercised in this case. The general doctrine is that this power is not unlimited; that the courts will not always refuse to investigate the question whether it has been properly exercised. Said the court in *Bogan* v. *Mortgage Co.*, *supra:* "But the supervisory or reviewing power of the commissioner of the land office or of the secretary of the interior is not an arbitrary, unlimited, or discretionary power, but a power that must be exercised according to law, and not in violation or disregard of it. When it is so exercised, and its exercise is not induced by fraud or mistake, the results it produces are sustained by the courts. Where its exercise has been induced by fraudulent misrepresentations or by material mistake of fact, or when the power has been exercised in violation or in disregard of law, the results produced are uniformly so modified by the decrees of the courts that those who are entitled in equity to the titles to the lands ultimately obtain them." To same effect are Cornelius v. *Kessel*, 128 U. S. 456, 9 Sup. Ct. 122; *Bernier* v. *Bernier*, 147 U. S. 242, 13 Sup. Ct. 244. It is well settled that, if the commissioner cancels an entry under a misconception of the law, the courts will rectify the error, and give the land to the one who would have received the patent if the mistake had not been committed. There are numerous cases in which this has been done. See, among others, the authorities last cited. But it is not pretended here that the cancellation of Simpkins' entry was the result of a mistake of law. The entry was canceled on the ground that it was fraudulent and speculative, and that Simpkins' final proof was false. These were all matters of fact. The commissioner having power to investigate them, and to reach a conclusion upon them, his decision is final, unless the case is

taken out of the ordinary rule by what are characterized as its exceptional features. It is one of the elements of the law that the decision of the land department on a question of fact is ordinarily binding on the courts. *Vantongeren* v. *Hefferman*, 5 Dak. 180, 38 N. W. 52, and cases cited; *Johnson* v. *Towsley*, 13 Wall. 72; *Quinby* v. *Conlon*, 104 U. S. 420; *Barden* v. *Railroad Co.*, 14 Sup. Ct. 1030; *Heath* v. *Wallace*, 138 U. S. 573, 11 Sup. Ct. 380; *Steel* v. *Refining Co.*, 106 U. S. 447, 1 Sup. Ct. 389; *Lee* v. *Johnson*, 116 U. S. 48, 6 Sup. Ct. 249. Many other authorities might be cited. The reasons for this rule are so obvious, and have been so often stated, that it would be a waste of time for us to allude to them.

Do the peculiar facts of this case take it out of this general rule? This brings us to a further consideration of the evidence. On September 13, 1884, W. W. McIlvain, special agent of the general land office, made a report to that office, in which he stated that only six acres of the tract in question had been cultivated, and that this constituted all the improvements on the land; that he thought there had never been any actual residence established on the land; that the claimant was entirely unknown in the neighborhood; and that the entry must have been fraudulent. This report was supported by four affidavits. Simpkins' final proof was false, and his entry fraudulent, if these facts were true. On this report the commissioner ordered a hearing before the local officers. A summons was issued and served by publication, the special agent certifying that the summons could not be personally served on Simpkins; that he was informed that Simpkins was not a resident of the territory; and that he believed that personal service could not be made upon him. It will be noticed that these facts were not sworn to, but were embodied in a mere certificate of the special agent. On the day set for hearing, S. B. Pinney appeared specially for Simpkins, and moved that the proceedings be dismissed, on the ground that there had been no legal service upon Simpkins. This motion was denied. Mr. Pinney was then notified by the receiver that he might and must

offer any evidence he had to support the entry made by Simpkins. On demand of Mr. Pinney for a copy of the allegations which formed the basis of the order that a hearing be had, the receiver exhibited to him the letter of the commissioner, directing the local officers to order a hearing, which letter referred to the report of the special agent that the proof made by Simpkins was false and the entry fraudulent. Thereupon Mr. Pinney insisted that the burden was on the government to offer evidence that the entry was fraudulent; and, the special agent having stated that he would offer no evidence, the case was closed, Mr. Pinney refusing to submit any evidence until the special agent should have introduced evidence on behalf of the government. The papers were then sent to the commissioner, who ordered, May 6, 1886, that the entry be held for cancellation. Mr. Pinney, still acting for Simpkins, then appealed to the secretary of the interior. His appeal was transmitted to the secretary of the interior, but was returned to the commissioner, with direction, to follow general instructions of July 6, 1886, (5 Dec. Dep. Int. 149,) which in substance required that, in case of an appeal from the decision of the commissioner holding an entry for cancellation upon the report of a special agent, the commissioner should order a hearing, instead of transmitting the case to the secretary. A second hearing was ordered by the commissioner, but, before this hearing took place, Mr. Pinney, representing the grantee, who then owned the property, and the mortgagee, who held the mortgage upon it which has since been foreclosed, applied for a *certiorari* to the commissioner, directing him to send up the papers on the appeal, instead of rehearing the case. This application was granted by the secretary. The papers having been transmitted to him, he held, on April 1, 1889, that the decision of the commissioner holding the entry for cancellation should be affirmed.

It is urged by plaintiff that the commissioner failed to acquire jurisdiction in the proceedings to cancel the entry, for the reason that the summons was not personally served, and that no affidavit for publication was ever made. The publication was made, as we

have already stated, upon the mere certificate of the special agent. We are referred to a rule of the department requiring an affidavit in such cases. It is the same rule which is set forth in the opinion in *Risdon* v. *Davenport*, (S. D.) 57 N. W. 483. That case is cited as in point on this question. The rule is not pleaded, as it was in the South Dakota case; but it seems to be our duty to take judicial notice of the rules and regulations of the land department. *Caha* v. *U. S.*, 152 U. S. 211, 14 Sup. Ct. 513. In the South Dakota case the failure to file an affidavit before publication is regarded as fatal to the jurisdiction of the commissioner, as in actions in courts of law. Even if we could assent to this view, it would not aid the plaintiff. After his special appearance had been overruled, Mr. Pinney, by his conduct, appeared generally. Thereafter the department was not without jurisdiction, although the error could have been taken advantage of within the department despite the general appearance. When a special appearance to object to jurisdiction is, after the objection is overruled, followed by a general appearance, the question of jurisdiction is not open to collateral attack. *Miner* v. *Francis*, 3 N. D. 549, 58 N. W. 343. The method of procedure in acquiring jurisdiction in cases where personal service cannot be made is prescribed by the legislature. The legislature having prescribed the particular mode of securing jurisdiction, the courts cannot change this mode or disregard it. But there is no limitation on the broad power of the commissioner to cancel entries save that imposed by the courts. Congress has not fixed the rules of practice and limited the mode of procedure. Neither has the department imposed upon itself any restriction of its power. The rule in question emanates from the department, and is subject to its control. The department may abrogate it. The department may suspend its operation in a particular case, or disregard it. The courts will not arrogate to themselves the right to compel obedience to a rule which the power that ignores it may at any time abolish. We must, however, not lose sight of the principle that in disregarding its rules the department must not act in an

arbitrary manner,—must not deny to the entryman any right to be heard. This limitation upon its power is imposed by the courts, and therefore cannot be ignored by the department. Should one of the rules of the department lead to arbitrary action by it,—should it result in a denial of a hearing,—the courts would restore to the entryman the rights he had lost by such unfair procedure, culminating in the cancellation of an honest entry. But, when the department has failed to require compliance with its own rules, it would be an unbecoming interference with an independent branch of the government for the courts to assume to dictate to the department that it should obey its own regulations, which it might at any moment abrogate, the action of the department not being arbitrary in the particular case. The rule in question was disregarded by the local officers and by the commissioner, and their action was affirmed by the secretary of the interior. This was not fatal to the action of the department in cancelling the entry, unless it resulted in an *ex parte* proceeding, in which the entryman had no chance to be heard, culminating in a cancellation of a *bona fide* entry. That it did not result in the denial of the right of the entryman to be heard is apparent from the evidence. On the day set for hearing, Mr. Pinney, representing the entryman, appeared specially, and objected to the proceedings, on the ground that no affidavit had been filed. This being overruled, he at first refused to offer any evidence until the charge had been exhibited to him; and, when he was shown this, he still declined to make any proof until the government should have offered evidence to impeach the entry. Simpkins at this time had ample chance to be heard. After the case had been sent to the commissioner, and the entry held for cancellation, he appealed to the secretary of the interior. Under the existing rules, it was, as we have already stated, the duty of the commissioner to order a hearing, instead of transmitting the papers to the secretary. This hearing was ordered, and would have been had if Mr. Pinney had not applied for and obtained a *certiorar* under which the papers were transmitted to the secretary. At

this time Mr. Pinney represented Simpkins and his grantee and the mortgagee of such grantee. Here was a second opportunity to be heard,—an opportunity afforded to all parties in interest. The department does not appear to have acted arbitrarily under these circumstances. On the application to have the secretary order the papers sent to him, it is stated as a reason why this should be done, instead of another hearing being had before the commissioner, that only questions of law were raised by the appeal, and that it did not controvert the facts alleged against the entry, or allude thereto. Moreover, arbitrary action of the department in canceling the entry would not of itself entitle the plaintiff to the relief he seeks. He invokes equity to decree that he is in equity entitled to the legal title. His position is that he had earned it, and that the government held it in trust for him, and that the government's grantee also holds it impressed with such trusts. It is not the certificate which entitles him to the legal title. The right to the title comes from compliance with the law. The certificate, so long as it stands, is evidence that the holder of it has complied with the law. When it is once set aside, it ceases to be of any value as evidence, and the party who claims the legal title because it was issued to him originally must show that he did in fact comply with the law, and that, because of the arbitrary action of the land department, he had no chance to establish that fact before the department.

Said the circuit court of appeals in *U. S.* v. *Steenerson*, 1 C. C. A. 552, 50 Fed. 504, at p. 509: "But if it appears in a given case that when, in the proper course of business, the commissioner of the land office was called upon to determine whether the pre-emptor was entitled to a patent, he adjudged that the entry was fraudulent, and therefore void, then the claimant is without a final adjudication in his favor, and he must resort to other evidence to sustain his claim." In this very case the proceedings to cancel the entry were *ex parte*, and yet the court ruled that this circumstance would not excuse the citizen from showing compliance with the law after the evidence of such compliance had been

annulled. Said the court: "But it is equally true that such action of the commissioner, being practically *ex parte*, is not conclusive, and that it is still open to Hanson and his grantees to establish a right to the land by proving a valid entry on his part, and performance by him of the acts required to complete a preemption entry." An *ex parte* cancellation may be in accordance with the facts. The courts do not decree that a person is entitled to the legal title merely on the ground that the cancellation of his entry was *ex parte*. If so, then a fraudulent entryman would secure the title merely because the department had not heard him when it canceled the entry. The commissioner having general power to cancel, the courts must assume that the power was not employed to the injury of an innocent entryman. His right to be heard in the courts on the question of fraud when the proceeding is *ex parte*—a right recognized by *U. S. v. Steenerson,* 1 C. C. A. 552, 50 Fed. 504–510—affords him ample protection. But, having no certificate with which to make out a *prima facie* case, he must resort to other evidence. Indeed, there is a strong intimation in this case that, as against the United States at least, he must offer other evidence when he claims the right to the legal title, not only when his entry has been canceled, but in all cases where he still holds the patent certificate. Said the court in that case: "The final certificate or receipt acknowledging payment in full, and signed by the officers of the local land office, is not in terms nor in legal effect a conveyance of the land. It is merely evidence on behalf of the party to whom it is issued. In a contest involving the title to land, wherein a person claims adversely to the United States, it is open to such claimant, notwithstanding the legal title remains in the United States, to prove that, by performance on his part of the requisite acts, he has become the equitable owner of the land, and that the United States holds the legal title in trust for him; but as the claimant in such case has not received a patent or formal conveyance, and has not become possessed of the legal title, he is required to show performance

on his part of the acts which when done entitle him under the law to demand a patent of the land." In *Swigart* v. *Walker* the cancellation was made, on the ground that the entryman had previously made a similar entry in another state, and therefore had no right to make the second entry. The proceedings appear to have been *ex parte*. There was nothing in the findings of the court to show that there had been a hearing or any notice given, and yet the court ruled that it would be presumed that the cancellation was lawful. The court said: "We have no doubt of the power of the commissioner. It is not claimed to have been exercised erroneously or fraudulently, and, if he is warranted in taking such action in any case, it will be presumed to have been regularly and legally done in this case." In *Holmes* v. *State*, (Ala.) 14 South. 51, the court held that, after cancellation of an entry, the entryman must support his claim to a patent by other evidence, saying: "Although it is averred in the answer that respondent made the necessary permanent improvements, and continuously resided upon the land from the date of his entry (to-wit, 1881) to April, 1884, when the same was commuted from a homestead entry to a cash entry, and the payment of the cash entry, there is no proof in the record of the truth of these averments other than such as may be inferred from the register's and receiver's certificate and receipt. The government had not issued to him a patent to the land; and, while the certificate and the receipt may have entitled him *prima facie* to the patent, they did not exclude the land department from investigating and determining the truth of the facts upon which the certificate and receipt were issued, and the *bona fides* of his homestead claim, and, if found fraudulent or untrue and insufficient, to cancel the same. The burden resting upon respondent in these respects has not been met or overcome."

In *Risdon* v. *Davenport*, (S. D.) 57 N. W. 482, the question arose upon the pleadings, the plaintiff having demurred to the answer. The defendant was the holder of a mortgage upon land, executed by the entryman whose entry had been canceled. Plaintiff held a patent under an entry made subsequently to such cancellation,

and was seeking by the action to have the mortgage annulled as a cloud on his title. He was thus attacking the validity of the canceled entry. The defendant set up that he had made a lawful entry, and that the same had been canceled without his being heard, and that the notice to him was not legal, for the reason that it was served only by publication, without any proof by affidavit that he could not be served personally. The court held that the answer set up a good defense. But it contained two elements which are lacking in this case. It was averred that the defendant was not heard. In the case at bar the entryman and his grantee and mortgagee have been heard, or they had a chance to be heard. It appeared from the answer in that case, as the court construed it, that his entry was honest, and that he had complied with the law. If there was any evidence in this case showing that Simpkins made the entry in good faith, and had complied with the law, a different conclusion might be reached. The failure of Simpkins to offer evidence of these facts on the first hearing, the refusal of Simpkins and his grantee and the mortgagee of his grantee to take advantage of the second hearing, when such evidence might have been offered, electing to have the case reviewed on the record already made, and the utter absence of any evidence in this case as to these facts, are very persuasive indications that such facts could not be proved. If Simpkins was not a *bona fide* entryman, he could not have claimed the legal title, even though the cancellation of his entry had been made *ex parte*. By showing that he had no opportunity to be heard before the department, the entryman makes out a case for a hearing in court; but, as he assumes the attitude of complaining of the action of the department, he must show that it operated to his prejudice. As he is in the position of claiming the legal title, he must prove by evidence that he has fully earned the same by an honest compliance with the law. The burden is on him, and it cannot be sustained without offering evidence in addition to the certificate and its *ex parte* cancellation. It is further urged that the local officers erred in requiring Simpkins to offer evidence to sustain

the entry before any evidence had been introduced by the government. But this was a matter for the decision of the department. The commissioner or the secretary might have held that this was error, and for that reason might have sent the proceedings back for further hearing. But they did not. They sustained the local officers. Assuming that they were wrong, their error cannot be collaterally reviewed by the courts. The decision of the land department on questions of fact properly before it, is conclusive on the courts, and such department must necessarily settle for itself what rules of evidence it will accept and follow. The collateral attack and overthrow of a decision on a question of fact, because the tribunal making the decision erroneously shifted the burden of proof from the shoulders of one litigant to those of the other, has yet to find support in future adjudications. There is no authority for such doctrine up to the present date. Again, an entryman, until a patent has been issued to him, is in the position of a claimant. He is asking for a patent. True, the local officers had been satisfied with Simpkins' proof, but the commissioner also must be satisfied. May he not say to the claimant, "I have reason to believe that your entry is fraudulent, and I require further proof?" Moreover, there is no claim made that the entry was not fraudulent; nor is there any evidence on the point. This consideration, of itself, would, for the reasons already stated, be sufficient to defeat plaintiff's contention based upon the ruling of the department as to the burden of proof.

There is nothing in the point that there was no evidence before the commissioner that the entry was fraudulent; or at least no competent evidence. The courts cannot review the decisions of the land department on the ground that the evidence was insufficient, or that only incompetent evidence was before it. The power to try questions of fact necessarily embraces the power to pass upon the weight and competency of evidence.

There is much force in the decision of the court in *Lewis* v. *Shaw*, 57 Fed. 516, that a cancellation is a nullity as against an

innocent purchaser, who is not heard, and who receives no notice of the proceedings, provided the entry was in fact an honest one, and the entryman actually complied with the law. Not having been offered an opportnnity to be heard before the land department as to these matters of fact, may he not litigate them in an action brought to enforce his right to the patent? But in this case (*Lewis* v. *Shaw*) the innocent grantee did not stop with an allegation that he had not been a party to the cancellation proceedings, but averred that, as a matter of fact, the entry was honest, and in conformity with law. The question arose on demurrer to the bill, and the case before the court was one where there had been, as to the plaintiff, an *ex parte* cancellation of a valid entry. The allegation that he was not and had no chance to be heard furnished a foundation for his further averment that the entry was legal. In the absence of the prior allegation, the court must have adjudged that the question whether the entry was legal was not open to investigation, having been settled, so far as it depended on matters of fact, by the decision of the department. See *Barden* v. *Railroad Co.*, 14 Sup. Ct. 1030, 1038, 1039; *Refining Co.* v. *Kemp*, 104 U. S. 651; *Steel* v. *Refining Co.*, 106 U. S. 450, 1 Sup. Ct. 389; *Heath* v. *Wallace*, 138 U. S. 573, 11 Sup. Ct. 380. After the litigant has shown that the decision ought not to be conclusive upon him, because he was not and could not be heard, or for some other equally valid reason, he must still prove that the entryman has complied with the law, and has acted in good faith, because such litigant is claiming that he has a right to the legal title, and these facts are indispensable to the maintenance of such claim. The certificate, being canceled, is no longer evidence of them. The case of *Lewis* v. *Shaw* is not in point, for three reasons: There is no evidence in the case at bar that the entry was in fact lawful and honest; second, it is apparent, as we have already seen, that the owner and also the mortgagee of the property, at the time the cancellation proceedings were pending, had full opportunity to be heard in support of the entry; and, finally, the want of jurisdiction, if any, was not cured in that case,

as it was in this, by a general appearance after the objection to the jurisdiction had been overruled. The case of *Stimson* v. *Clarke*, 45 Fed. 760, admits the power to cancel, and yet practically decides against the existence of such power. This decision must be placed in the list of the authorities which are in conflict with our decision. Among these cases are *Smith* v. *Ewing*, 23 Fed. 741, and *Wilson* v. *Fine*, 40 Fed. 52.

We now come to the last question in this case. There is evidence warranting the conclusion that the mortgagee to whom the land was mortgaged before these cancellation proceedings were instituted was a mortgagee in good faith, for a valuable consideration, and made the loan without notice or suspicion of any failure on the part of Simpkins to comply with the law, or of his fraudulent purpose in making the entry. The plaintiff, under the foreclosure, occupies the same vantage ground. Do these facts prevent a cancellation of the entry? We think not. Here, again, the cases disagree. But on this point, as on the general question of the power to cancel, the weight of authority, and we think the better reason, support our view. *Swigart* v. *Walker*, (Kan.) 30 Pac. 162; *Jones* v. *Meyers*, (Idaho,) 26 Pac. 215; *Judd* v. *Randall*, (Minn.) 29 N. W. 589; *Figg* v. *Hensley*, 52 Cal. 299; *Fernald* v. *Winch*, (Kan.) 31 Pac. 665; *Mortgage Co.* v. *Hopper*, 56 Fed. 67, 74, 75; *Lewis* v. *Shaw*, 57 Fed. 516; *Freese* v. *Scouten*, (Kan.) 36 Pac. 741. When the *bona fide* purchaser who holds the interest of the entryman at the time of the commencement of the cancellation proceedings is not heard, and has no chance to be heard, before the department, possibly the proceedings will be regarded as *ex parte* with respect to him, and he be allowed to prove in court the lawfulness of the entry. See *Lewis* v. *Shaw*, 57 Fed. 516. See, also, *U. S.* v. *Steenerson*, 1 C. C. A. 552, 50 Fed. 504; *Lindsey* v. *Hawes*, 2 Black, 254; *Garland* v. *Wynn*, 20 How. 8; *Lytle* v. *Arkansas*, 22 How. 193. There is a strong disposition on the part of the courts to throw about the entryman, and those who claim under him, protection against arbitrary destruction of their rights. See *Cornelius* v. *Kessel*, 128 U. S. 461, 9 Sup. Ct. 122, in addition to the cases last above cited.

It is urged that the act of March 3, 1879, has limited the power of the commissioner. That act merely provides that, before making final proof, the applicant shall file with the register notice of his intention to make such proof, stating therein the description of the land and the names of the witnesses by whom he will prove the necessary facts, and that thereupon the register shall publish for a period of 30 days a notice that such application has been made. After that final proof can be made. It is said that this gives notice to the world that the applicant claims that he has complied with the law, and is entitled to enter the land, and that thereupon the government must make its investigation before allowing the entry, and not after. But the government, before this act was passed, was in every case apprised of the intention of the applicant to enter the land in time to investigate the facts before accepting final proof. Moreover an investigation before entry will not always lead to a correct conclusion. Subsequent conduct may throw new light on the problem. The man who seemed honest on the day of entry may be shown by later developments to have been not a *bona fide* settler, but a mere speculator. This act possibly gave the government improved facilities for detecting fraud in advance; but no legislation could so improve them as to render subsequent investigation of no importance in the carrying out of the policy of preventing the acquisition of public lands by dishonest methods. It is a most extraordinary contention that this act, which in no manner alludes to the power of the commissioner, should be interpreted as abrogating this most valuable and even indispensible power of the commissioner to investigate the lawfulness of an entry after it has been allowed. We hold that the act of 1879 in no manner affects the commissioner's power to cancel an entry.

We are next referred to section 7 of the act of March 3, 1891, entitled "An act for the repeal of the timber culture law, and for other purposes." That portion of section 7 which relates to this case provides as follows: "And all entries made under pre-emption, homestead, desert land, or timber culture laws, in which

final proof and payment may have been made and certificates issued; and to which there are no adverse claims originating prior to final entry, and which have been sold or encumbered prior to the first day of March eighteen hundred and eighty eight, and after final entry, to *bona fide* purchasers, or encumbrancers, for a valuable consideration, shall unless upon investigation by a government agent fraud on the part of the purchaser has been found, be confirmed and patented upon presentation of satisfactory proof to the land department of such sale or encumbrance." At the time this act became a law, the entry in question was not in existence. It was canceled several days before. The act does not relate to such entries. Secretary Noble so ruled in Case of Ross, 12 Dec. Dep. Int. 446.

The judgment is affirmed.

BARTHOLOMEW, C. J. (concurring.)  My associates reach a judgment of affirmance without referring to § 2262, Rev. St. U. S., and purely upon common law principles. I concede that their conclusion is correct upon those principles. I concede, also, that the same conclusion must be reached under that section, as construed in *Mortgage Co.* v. *Hopper*, 56 Fed. 67, and cases there cited. The construction there given to the statute simply makes it declaratory of the law as it stood without the statute so far as it refers to conveyances of the land. I confess that, in the absence of such construction, I might have concluded that the statute was enacted expressly to relieve parties who had invested money as the record shows that plaintiff did in this case. But the construction is unmistakable, and a federal construction of a federal statute ought to control this court; hence I concur.